

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FRANK T. COFFEY,                     )
                                     )
              Plaintiff,             )
                                     )
      v.                             )
                                     )    Case No. 04 C 3621
NORTHEAST ILLINOIS REGIONAL          )
COMMUTER RAILROAD                    )    HONORABLE CHARLES R. NORGLE
CORPORATION, d/b/a                   )
METRA,                               )
              Defendant.             )

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the court is Defendant's Motion for Summary Judgment brought pursuant to

Federal Rule of Civil Procedure 56(c). For the following reasons, Defendant's Motion for

Summary Judgment is granted.

## I. BACKGROUND[1]

### A. Facts

This case arises out of injuries sustained by Plaintiff Frank T. Coffey ("Coffey") while in

the course of his employment with Defendant Northeast Illinois Regional Commuter Railroad

Corporation, d/b/a Metra ("Metra"). Coffey had been employed by Metra as an engineer since

1978. Over the twenty year period, he had been in and out of hundreds of locomotive engines

and was familiar with the Blue Island station. At 5:00 a.m on June 21, 2001, Coffey arrived at

---

[1] The court takes the undisputed facts from the parties' Local Rule 56.1 Statements, and
notes disputed facts within the text.

the Blue Island station to begin his shift. According to Coffey, he inspected a locomotive engine which was located at the south end of a train. After his inspection, Coffey moved the train to the Vermont Street station. At the Vermont Street station, Coffey switched from the locomotive engine on the south end, to the cab car at the north side of the train. A cab car is a passenger car that has a compartment with a duplicate set of operation controls that allows the engineer to operate the train without being in the locomotive engine car. This configuration is called a "push-pull" configuration. The process of setting up a train to enable it to operate from either the cab car or locomotive engine is called "changing ends."

Around 5:13 a.m., after Coffey had changed ends at the Vermont station, he moved to cab car 8262, which was located on the second level of the car. Coffey carried his work bag which included maps, routes, and personal items. This bag is commonly known as a "grip." Coffey placed his grip behind the engineer's seat. Because the train was in the station, and it was not yet sunrise, the cab car was still dark. The record is silent regarding artificial lighting. As Coffey reached for the light switch, he hit his head on a sun visor that was in the horizontal position. The visor was fastened with brackets on each end, which allowed it to fold up or down, but not turn from side to side. According to Coffey, he believed the visor had vibrated down to the horizontal position.

Coffey reported the injury to his supervisor, Victor A. Flores ("Flores"), and filled out a Metra Employee Incident Injury/Illness Report. Flores stated that Coffey told him that he tripped over his grip, lost balance, and bumped his head. Later on June 21, Coffey completed an Employee Incidental Injury and Illness Report, in which he stated that in addition to his pain on the right side of his neck, he also experienced head, jaw, and shoulder pain. Metra's Mechanical

2

Department examined the visor at 10:30 a.m. on June 21, within hours of the injury reporting, and did not find any defects. Coffey claims that his injuries did not heal, and that he was prescribed Celebrex for his pain. Metra claims that prior to Coffey's accident, it had not received any complaints from engineers or personnel regarding the sun visor, or placement of the light switch in cab car 8262.

## B. Procedural History

On May 25, 2004, Coffey filed a two-count Complaint alleging violations of the Federal Employers' Liability Act ("FELA") and the Locomotive Inspection Act, ("LIA"). Then, on February 22, 2006, Metra filed its Motion for Summary Judgment. Coffey Responded on March 22, 2006, and Metra Replied on April 4, 2006. Metra's Motion for Summary Judgment is fully briefed and before the court.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Heft v. Moore, 351 F.3d 278, 283 (7th Cir. 2003), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Szymanski v. Rite-Way Lawn Maintenance Co., 231 F.3d 360, 364 (7th Cir. 2000); see also Vukadinovich v. Bd. of Sch. Tr.'s of North Newton School, 278 F.3d 693, 699 (7th Cir. 2002).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Stinnett v. Iron Works

3

Gym/Executive Health Spa, Inc., 301 F.3d 610, 613 (7th Cir. 2002). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. See FED. R. CIV. P. 56(c); see also Koszola v. Bd. of Educ. of City of Chicago, 385 F.3d 1104, 1108 (7th Cir. 2004). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also First Nat'l Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 280 (1968); Spiegla v. Hall, 371 F.3d 928, 935 (7th Cir. 2004). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

When a party moves for summary judgment, the court must view the record and all inferences in a light most favorable to the non-moving party. Alexander v. City of South Bend, 433 F.3d 550, 554 (7th Cir. 2006); Ameritech Benefit Plan Comm. v. Communication Workers of Am., 220 F.3d 814, 821 (7th Cir. 2000). However, the inferences construed in the non-moving party's favor must be drawn from specific facts identified in the record that support that party's position. See Szymanski, 231 F.3d at 364. Under this standard, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hospital and Medical Center, 328 F.3d. 890, 892-93 (7th Cir. 2003) (citing Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888-89 (1990)).

## B. Coffey's Claims

### 1. FELA- 42 U.S.C. § 51

The FELA provides that "every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed . . . for such injury . . . resulting in whole or

4

in part from the negligence of any of the officers, agents, or employees of such carrier." 45

U.S.C. § 51; Holbrook v. Norfolk Southern Railway Co., 414 F.3d 739, 742 (7th Cir. 2005). The

FELA "imposes on railroads a general duty to provide a safe workplace." Id. (quoting McGinn

v. Burlington Northern R.R.Co., 102 F.3d 295, 300 (7th Cir.1996)) (internal citations omitted).

However, the FELA does not "render a railroad an insurer of its employees." Holbrook, 414

F.3d at 742 (quoting Consol. Rail Corp. v. Gottshall, 512 U.S. 532, 543 (1994)).

Because the statute "is meant to offer broad remedial relief to railroad workers, a

plaintiff's burden when suing under the FELA is significantly lighter than in an ordinary

negligence case." Id. (quoting Lisek v. Norfolk & Western Ry. Co., 30 F.3d 823, 832 (7th Cir.

1994)). Therefore, a railroad company "will be held liable where 'employer negligence played

any part, even the slightest, in producing the injury.'" Walker v. Northeast Regional Commuter

R.R. Corp., 225 F.3d 895, 897 (7th Cir. 2000) (quoting Lisek, 30 F.3d at 831). The plaintiff in

an FELA case must "proffer some evidence of the defendant's negligence in order to survive

summary judgment." Holbrook, 414 F.3d at 742.

In order to "establish that a railroad beached its duty to provide a safe workplace, the

plaintiff must show circumstances which a reasonable person would foresee as creating potential

for harm." Id. (quoting McGinn, 102 F.3d at 300). "To establish foreseeability, a plaintiff must

show that the employer had actual or constructive notice of those harmful circumstances." Id.

(quoting Williams v. Nat'l R.R. Passenger Corp., 161 F.3d 1059, 1063 (7th Cir. 1998)).

In addition, the Locomotive Inspection Act ("LIA") requires that railroad carriers use

locomotives only when "the locomotive. . . and its parts and appurtenances. . . 1) are in proper

condition and safe to operate without necessary danger or personal injury . . . , and 2) can

5

withstand every test prescribed by the Secretary under this chapter." 49 U.S.C. § 20701. There are two ways in which a railroad company can violate the LIA. "A rail carrier may breach the broad duty to keep all parts and appurtenances of its locomotives in proper condition and safe to operate without unnecessary peril to life or lim, in violation of 45 U.S.C. § 23, or a rail carrier may fail to comply with the regulations issued by the Federal Railroad Administration." McGinn, 102 F.3d at 299. However, "this does not mean that the LIA demands that liability ensue in every case in which a plaintiff alleges that a carrier's failure to install some piece of equipment on a locomotive rendered the locomotive unsafe." Id. With these principles in mind, we turn to Coffey's claims.

### 2. *Coffey has not created a genuine issue as to Metra's Negligence under the FELA or LIA*

As an initial matter, the court notes that "the LIA and the FELA are interrelated" Id. Railroads will incur liability under the FELA when its employees are injured as a result of a violation of the LIA. Id. Therefore, the court will analyze both of Coffey's claims simultaneously.

Count One of the Complaint alleges that Metra failed to provide Coffey with a "reasonably safe place to work; reasonably safe methods to perform his job; reasonably safe work equipment," and that Metra "failed to provide a locomotive with proper standard equipment, including a visor in the cab. . . that would remain in the locked vertical position." Compl, ¶ 6. Count Two alleges that Metra's locomotive was "not safe to operate . . . its visor was defective. . . and did not contain sufficient lighting. . . ." Id., ¶ 7.

However, the facts in the record establish that Metra has complied with all federally

6

mandated laws in regards to locomotives. There is no evidence to suggest that the visor on which Coffey bumped his head was unsafe, or that the visor was in violation of any federal regulation. Metra inspected the visor at 10:30 a.m. on the day of the accident, and found no defects. Furthermore, Metra states that it had not received any complaints or warnings about a faulty visor in the cab car at issue prior to Coffey's injury.

Coffey's argues that because the visor was in a horizontal instead of vertical position, this establishes at least the question of negligence on Metra's behalf. The mere fact that the visor was in a horizontal is insufficient to raise a genuine issue of material fact as to whether Metra had "breached its duty to provide a safe workplace." Holbrook, 414 F.3d at 742. Coffey points to no rule or regulation that requires Metra to keep a sun visor in a cab car in a vertical position. Additionally, Coffey has not presented even the slightest piece of evidence to suggest that Metra's negligence is at fault for the location, or alleged defect in the sun visor. Therefore, Coffey is "unable proffer some evidence of the defendant's negligence." Id., at 742.

Moreover, Coffey claims that the light switch in the cab car was placed in an unsafe location. Coffey maintains that had the switch been located closer to the door, he would not have hit his head on the sun visor. In order to establish a violation of the LIA, Coffey must show that Metra failed to keep all parts and appurtenances in working order, or that Metra failed to comply with FRA regulations. See McGinn, 102 F.3d at 299. Despite this, Coffey points to no federal rule or regulation which requires Metra to place the light switch in a specific location. Moreover, the only regulations Coffey cites merely state that "each . . . controlling locomotive shall . . . have a conveniently located light that can be readily turned on and off by persons operating the locomotive . . . ." 49 C.F.R. § 229.127. There is no evidence that suggests the light switch in cab car 8262 was placed inconveniently. It is

7

only Coffey's personal belief that the light switch was in an unreasonable location. The fact that Coffey hit his head in an effort to turn on the light switch does not create a question of liability under the LIA or FELA.

Furthermore, there is no evidence in the record to suggest that Metra had either actual or constructive notice of any alleged defect in the visor. See Holbrook, 414 F.3d at 742. In fact, Metra had no reason to believe that the visor in cab car 8626 was faulty, because Metra never received a complaint prior to Coffey's incident. Metra cannot be found negligent for alleged hazardous working conditions that were unforeseeable. See McGinn, 102 F.3d at 300. The only evidence Coffey presents is his mere belief that the screws on the visor were loose, which caused it to shift down to the horizontal position. However, without anything more, Coffey is unable to create a genuine issue of material fact as to Metra's alleged negligence. The court cannot say, based on the evidence in the record, that Coffey has shown that Metra knew or had reason to know about "circumstances which a reasonable person would foresee as creating a potential for harm." Holbrook, 414 F.3d at 742.

As a result, there is no evidence to suggest that Metra played even the slightest part in producing the injury, see Walker, 225 F.3d at 897, or that Metra had actual or constructive notice of the alleged hazard. See Holbrook, 414 F.3d at 742.

### III. CONCLUSION

For the foregoing reasons, the court grants Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.

ENTER:

_Charles R Norgle_

CHARLES RONALD NORGLE, Judge

United States District Court

DATED: 4-7-06

8